CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 2 3 2019

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

|  |  |  |
|---|---|---|
| **ANTHONY IVAN HAIRSTON** | ) | |
| **1820 Fremont Circle, NW** | ) | |
| **Roanoke, VA 24017** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. 7:19CV328 |
| | ) | |
| **SHERIFF TIM ALLEN,** | ) | |
| **340 Campbell Avenue, SW** | ) | |
| **Roanoke, VA 24016** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CHIEF DEPUTY DAVID K. BELL** | ) | |
| **340 Campbell Avenue, SW** | ) | |
| **Roanoke, VA 24016** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OFFICER WILLIAM BELANGER,** | ) | |
| **340 Campbell Avenue, SW** | ) | |
| **Roanoke, VA 24016** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **OFFICER MURPHY,** | ) | |
| **340 Campbell Avenue, SW** | ) | |
| **Roanoke, VA 24016** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SERGEANT EARLS,** | ) | |
| **340 Campbell Avenue, SW** | ) | |
| **Roanoke, VA 24016** | ) | |
| | ) | |
| **and** | ) | |

SERGEANT THOMAS BOONE,                          )
340 Campbell Avenue, SW                          )
Roanoke, VA 24016                                )
                                                 )
and                                              )
                                                 )
LIEUTENANT SCOTT FANNIN,                         )
340 Campbell Avenue, SW                          )
Roanoke, VA 24016                                )
                                                 )
and                                              )
                                                 )
LIEUTENANT MONICA PERKINS,                       )
340 Campbell Avenue, SW                          )
Roanoke, VA 24016                                )
                                                 )
and                                              )
                                                 )
JANE/JOHN DOE DEPUTIES,                          )
Officers on duty at the Roanoke City Jail from   )
April 24, 2017 to May 24, 2017,                  )
                                                 )
and                                              )
                                                 )
WELLPATH LLC f/k/a CORRECT CARE                  )
SOLUTIONS, LLC                                   )
                                                 )
        Serve: Corporate Creations Network Inc.  )
               Registered Agent                  )
               6802 Paragon Place #410           )
               Richmond, Virginia 23230          )
                                                 )
and                                              )
                                                 )
CORRECT CARE SOLUTIONS, LLC                      )
                                                 )
        Serve: Corporate Creations Network Inc.  )
               Registered Agent                  )
               6802 Paragon Place #410           )
               Richmond, Virginia 23230          )

2

|  |  |
|---|---|
| and | ) |
|  | ) |
| **AMY HOVIS PA-C,** | ) |
| **1336 W. Main Street** | ) |
| **Salem, VA 24153** | ) |
|  | ) |
| and | ) |
|  | ) |
| **KARL KLETZING, M.D.,** | ) |
| **324 Campbell Avenue, SW** | ) |
| **Roanoke, VA 24016** | ) |
|  | ) |
| and | ) |
|  | ) |
| **RACHAEL BOON, CMA** | ) |
| **324 Campbell Avenue, SW** | ) |
| **Roanoke, VA 24016** | ) |
|  | ) |
| and | ) |
|  | ) |
| **VICTORIA BURDETTE, CMA** | ) |
| **324 Campbell Avenue, SW** | ) |
| **Roanoke, VA 24016** | ) |
|  | ) |
| and | ) |
|  | ) |
| **DEANNA BERNARD, CMA** | ) |
| **324 Campbell Avenue, SW** | ) |
| **Roanoke, VA 24016** | ) |
|  | ) |
| and | ) |
|  | ) |
| **LIGIA TRIGO, CMA** | ) |
| **324 Campbell Avenue, SW** | ) |
| **Roanoke, VA 24016** | ) |
|  | ) |
| and | ) |
|  | ) |

SHANITA BYERS, CMA )
324 Campbell Avenue, SW )
Roanoke, VA 24016 )
)
and )
)
BRIDGET RANDOLPH )
324 Campbell Avenue, SW )
Roanoke, VA 24016 )
)
and )
)
JANE/JOHN DOE, M.D., )
CCS's Licensed Physician and Medical Director )
at Roanoke City Jail from )
April 24, 2017 to May 24, 2017, )
)
and )
)
JANE/JOHN DOES )
Medication Administration Personnel and )
Sick Call Triage Nurses on duty at Roanoke City )
Jail from April 24, 2017 to May 24, 2017, )
)
and )
)
JUSTIN PHAM, M.D. )
)
Defendants. )
)

## COMPLAINT

Plaintiff Anthony Ivan Hairston, by and through counsel, brings this action against

Defendants Sheriff Tim Allen, Chief Deputy David K. Bell, Officer William Belanger, Officer

Murphy, Sergeant Earls, Sergeant Thomas Boone, Lieutenant Scott Fannin, Lieutenant Monica,

Jane/John Doe Deputies, Wellpath LLC f/k/a Correct Care Solutions LLC, Amy Hovis, PA-C,

Karl Kletzing, M.D., Rachael Boon CMA, Victoria Burdette CMA, Deanna Bernard CMA,

Ligia Trigo CMA, Bridget Randolph CMA, Shanita Byers CMA, Jane/John Doe, M.D. and Medical Director, Jane/John Does Medication Administration Personnel and Sick Call Triage Nurses, and Justin Pham, M.D. (collectively "Defendants"),[1] and moves this Court for judgment against the Defendants on the grounds and in the amounts set forth below:

## INTRODUCTION

This case is brought by Anthony Ivan Hairston, who was incarcerated at the Roanoke City Jail ("the Jail") from September 2016 to September 2017. As an inmate at the Jail, Plaintiff was completely dependent on Defendants to provide him with timely and appropriate medical care. While incarcerated, Plaintiff ruptured his right Achilles tendon on April 24, 2017. Despite the obviousness of this serious medical condition (e.g. severe pain, swelling, inability to ambulate), Defendants refused to provide timely and appropriate medical care for Plaintiff's injury. Despite daily observations of Mr. Hairston's painful and obvious injury, Defendants waited thirty (30) days before they finally took Plaintiff to see an orthopedic physician. At that point, it was too late to perform the surgery that could have restored his ankle and tendon to full function had it been timely performed. As a consequence, Mr. Hairston was permanently disabled.

Plaintiff alleges violations of the Eighth and Fourteenth Amendments of the Constitution of the United States of America by all Defendants, jointly and severally, and asserts claims pursuant to 42 U.S.C. §1983 against all Defendants, jointly and severally. Plaintiff further alleges medical negligence and third-party beneficiary breach of contract claims against Wellpath LLC f/k/a Correct Care Solutions, LLC, Correct Care Solutions, LLC, Amy Hovis, PA-C, Karl

---

[1] To the extent John and Jane Does are employees and/or agents of Defendant CCS and/or Defendant Allen, the true name and capacity of each Defendant Doe is presently unknown to the Plaintiff. Plaintiff sues Defendant Does by such fictitious name and will move for leave to amend this Complaint to add the true names when the same has been ascertained.

Kletzing, M.D., Rachael Boon CMA, Victoria Burdette CMA, Deanna Bernard CMA, Ligia

Trigo CMA, Bridget Randolph CMA, Shanita Byers CMA, Jane/John Doe, MD and Medical

Director, Jane/John Does Medication Administration Personnel and Sick Call Triage Nurses, and

Justin Pham, M.D. (collectively "CCS Defendants"). Plaintiff seeks compensatory damages

against all Defendants.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and

1367(a).

2. Venue is proper in this District under § 1391(b), because one or more of the

Defendants reside in this judicial district, and because all or a substantial part of the events, acts

and/or omissions giving rise to the named Plaintiff's claims occurred in this judicial district.

## PARTIES

3. Plaintiff, Anthony Ivan Hairston ("Mr. Hairston") is a citizen of the United States

of America and a resident of Roanoke, Virginia.

4. Mr. Hairston was incarcerated at the Roanoke City Jail and in the custody of the

City of Roanoke Sheriff's Office from September 2016 to September 2017.

5. Defendant Tim Allen, as the Sheriff of the City of Roanoke is a constitutional

officer and, at all times relevant hereto, was the duly elected Sheriff of the City of Roanoke.

Defendant Allen operated, directed, and supervised the Jail and his deputies, agents and

employees. Defendant Allen was responsible for (i) training, supervision and conduct of his

deputies; (ii) promulgating policies and customs regarding training and supervision of deputies;

and (iii) promulgating policies to ensure timely and adequate delivery of medical care to inmates,

including Mr. Hairston. At all times while Mr. Hairston was an inmate at Roanoke City Jail,

Sheriff Allen had a duty to ensure the care of Mr. Hairston, and delegated that duty to his deputies, agents and employees. Sheriff Allen is sued in his individual capacity.

6.     At all times relevant hereto, Defendant Chief Deputy David K. Bell was an officer of the Roanoke City Sheriff's Office. Defendant Bell was a duly appointed and acting deputy and employee of Defendant Sheriff Allen's, and was an agent and employee of the Sheriff Allen, acting at all relevant times, within the scope of such employment. Upon information and belief, Defendant Bell had his own and overlapping duties to perform surveillance and/or rounds to ensure the safety of Mr. Hairston and others at the Jail. Defendant Bell was responsible for the care and supervision of Mr. Hairston. Defendant Bell is sued in his individual capacity.

7.     Defendants Officer William Belanger, Officer Murphy, Sergeant Earls, Sergeant Thomas Boone, Lieutenant Scott Fannin, Lieutenant Monica Perkins, and Jane/John Does Deputies (collectively "Deputies") were agents and/or employees of Defendant Allen. These Deputies were on duty and assigned to work in the area where Mr. Hairston was housed at the time of his need for medical attention. The Deputies are sued in their individual capacities.

8.     At all times relevant hereto, Defendant, Wellpath LLC, was formerly known as Correct Care Solutions, LLC. Wellpath LLC is a for-profit corporation organized and existing under the laws of the State of Delaware and maintaining its principal place of business in Nashville. At all times relevant hereto, Correct Care Solutions, LLC was a for-profit corporation, organized and existing under the laws of the State of Kansas and maintaining its principal place of business in Nashville, TN. Wellpath LLC and Correct Care Solutions, LLC, are collectively referred to as "CCS" hereinafter.  CCS held itself out to the general public as competent and qualified to render nursing and medical care to inmates at jails and correctional facilities by and through its actual and apparent agents, servants, and/or employees, including, but not limited to

Defendants Amy Hovis, PA-C, Karl Kletzing, M.D., Rachael Boon CMA, Victoria Burdette CMA, Deanna Bernard CMA, Ligia Trigo CMA, Bridget Randolph CMA, Shanita Byers CMA, Jane/John Doe, M.D. and Medical Director, Jane/John Does Medication Administration Personnel  and Sick Call Triage Nurses, and Justin Pham M.D. These employees and agents were acting within the scope of their employment and/or agency with CCS and it us therefore liable for their actions in connection  therewith pursuant to the doctrine of *respondeat superior* and/or agency

9.     Defendant CCS contracted with the City of Roanoke to provide all medical, dental, mental health, and psychiatry services to inmates and detainees residing at the Roanoke City Jail, including Plaintiff. Pursuant to its contract with the City of Roanoke, CCS agreed to provide constitutionally adequate health care services to all prisoners residing at Roanoke City Jail, including Plaintiff.

10.     At all times relevant hereto, Defendants Amy Hovis, PA-C, Rachael Boon CMA, Victoria Burdette CMA, Deanna Bernard CMA, Ligia Trigo CMA, Bridget Randolph CMA, Shanita Byers CM, Jane/John Does Medication Administration Personnel and Sick Call Triage Nurses, Karl Kletzing, MD, Jane John Doe M.D. and the Medical Director and Justin Pham, M.D. ("CCS Defendants") were licensed health care providers employed and/or contracted by CCS to provide nursing and medical services at the Jail. At all times relevant hereto, they were responsible for providing constitutionally adequate, appropriate and timely healthcare care to inmates at the Jail, including Mr. Hairston.

11.     Defendant Karl Kletzing, MD, Jane John Doe M.D. and the Medical Director ("the Physicians") were, at all times relevant hereto, Virginia licensed physicians employed and/or contracted by CCS to provide physician services at the Jail. The Physicians served as the

health authority for the Jail and were responsible for providing and supervising all health care services for inmates, including supervising sick call services. The Physicians were responsible for making all final medical judgments, and arranging for the availability of health care services to inmates.

12.     At all times relevant hereto, Justin Pham, M.D., was a licensed healthcare provider who was contracted and/or employed by CCS through MMDS Mobile X-Ray to provide radiology services for inmates at the Roanoke City Jail. At all times relevant hereto, Defendant Dr. Pham was responsible for providing constitutionally adequate, appropriate and timely healthcare care to inmates at the Jail, including Mr. Hairston.

13.     At all times relevant to the events, acts and/or omissions alleged in this Complaint, the individual Defendant Deputies, individually and collectively, acted under color of state law, pursuant to their authority and responsibilities as employees and/or agents of Defendant Allen and/or the City of Roanoke.

14.     At all times relevant hereto, CCS and its employees, agents, and servants, acted under color of state law and were state actors as defined in *West v. Atkins*, 487 U.S. 42, 49 (1988).

## FACTS

15.     Plaintiff incorporates by reference paragraphs 1 through 12 as is set forth fully herein.

16.     On or about September 16 or 17, 2016, Mr. Hairston was arrested and detained at the Roanoke City Jail.

17.     On September 19, 2016, Nurse Heather Glenn conducted a preliminary health assessment where she noted Mr. Hairston's history of back-related problems and high blood pressure.

18.     At all times relevant hereto, while Mr. Hairston was incarcerated at the Jail, the CCS Defendants came to the inmate pods three times a day to deliver medications at or around 8:00 a.m., between 1:00 p.m. and 2:00 p.m., and again between 7:00 p.m. and 8:00 p.m. Each morning, Mr. Hairston lined up to receive medication for his high blood pressure from the CCS medication administration personnel.

19.     At all times relevant hereto, a nurse (hereinafter "Sick Call Triage Nurses")  was required under CCS's contract with the City of Roanoke to conduct a sick call triage at least once per day, seven days a week, and within twenty-four (24) hours of request, and to provide  access to sick call consultation when appropriate.

20.     At all times relevant hereto, the inmate pods were guarded by the Deputies 24 hours a day. There were always three Deputies on duty per shift.

21.     Upon information and belief, at all times relevant hereto, Defendant Chief Deputy Bell conducted rounds at the Jail to ensure safety of inmates, and was made aware that Mr. Hairston had sustained a serious injury to his right foot and leg on April 24, 2017.

22.     On or about April 24, 2017, at or around 7:30 a.m., Mr. Hairston sustained a painful rupture to his right Achilles tendon. As he was getting down from the top bunk bed, his right foot struck the metal bar on the bed. He heard a popping sound and his foot flapped, causing intense pain. He could not put pressure on his right foot, and his foot and leg began to swell. He could only walk by limping. His limp and swollen foot and leg were readily observable to anyone near him.

23. At or around 8:00 a.m., as Mr. Hairston limped to obtain his blood pressure medicine, he informed Defendant Deanna Bernard that he had injured his leg that morning. Mr. Hairston showed his leg to Defendant Bernard, and told her, "Something's wrong. Something popped. It's flapping. It's swollen. It's serious. I need to see the doctor immediately." Defendant Bernard provided no nursing or medical assistance to Mr. Hairston and made no arrangements for him to see the doctor.

24. On the afternoon of April 24, 2017, Defendant Bernard came to the pods again to administer medications to the inmates. Mr. Hairston again showed her his swollen foot and leg and asked for the doctor. Defendant Bernard told him that she would let the doctor know about his injury but provided no nursing or medical assistance to Plaintiff and made no arrangements for him to see the doctor.

25. Again, that evening at around 7 p.m. or 8 p.m., when the Jane Doe medication administration personnel on duty came to the pod, Plaintiff showed his swollen foot and leg and requested to see the doctor. The medication administration personnel told Mr. Hairston that she would let the doctor know of his injuries, but offered no nursing or medical assistance at that time, and made no arrangements for him to see the doctor.

26. Throughout April 24, 2017, Mr. Hairston showed his injured foot and leg to the Deputies on duty, and told them that he needed to see the doctor immediately because he had been seriously injured. None of the Deputies took any action to obtain nursing or medical care for Mr. Hairston or to schedule an appointment with the doctor.

27. On April 25, 2017, and each day thereafter, Mr. Hairston complained to CCS medication administration personnel who came to his pod. His pain, swelling, and limp were

readily observable to the CCS personnel. Nevertheless, no medical care was provided or obtained for his serious medical condition by CCS personnel.

28.     On April 25, 2017, at 8:00 a.m., Mr. Hairston expressed his pain and showed his swollen leg to Defendant Victoria Burdette. Ms. Burdette provided no nursing or medical care. Ms. Burdette told Mr. Hairston that she would notify the jail physician, but no care was forthcoming, and no appointment was made with the doctor.

29.     On April 25, 2017, at the afternoon and evening medication rounds, Mr. Hairston expressed his pain to and showed his swollen leg to CCS Jane/John Does healthcare personnel. No care was forthcoming from these personnel, and he was not taken to the doctor.

30.     On each morning, afternoon, and evening shift between April 25, 2017 and May 24, 2017, when CCS Defendants Bernard, Burdette, Rachael Boon CMA, Ligia Trigo CMA, Bridget Randolph CMA, Shanita Byers CMA, and Jane and John Doe CCS medication administration personnel delivered medication to Mr. Hairston's pod, Mr. Hairston expressed his pain, showed his swollen foot and leg to these personnel, requested help and requested to see a physician. Despite Mr. Hairston's pleas for help, no medical assistance or consultation with a physician was provided until May 24, 2017.

31.     On or about April 27, 2017 or April 28 2017, Mr. Hairston completed a sick call request to see a physician for his injury. On April 30, 2017, a radiology technician performed an X-ray of his foot and leg, which was ordered by Amy Hovis, PA-C, a physician assistant, and read by Justin Pham, M.D. on April 30, 2017. No health care provider, including Defendant Hovis, Defendant Pham, or any other physician ever saw Mr. Hairston or took any steps to address Mr. Hairston's severe pain and disability. No medical care was provided to Mr. Hairston to determine the cause of his pain and lower extremity disability.

32.     After April 29, 2017, Mr. Hairston's leg remained swollen, he still could not put pressure on his right leg, and the pain worsened. Throughout the time period from April 24, 2017 to May 24, 2017, Mr. Hairston repeatedly asked the Deputies to see a physician for his injured foot and leg. His requests were ignored.

33.     Throughout the period of time from April 24, 2017 to May 24, 2017, Mr. Hairston was advised by CCS personnel that they were making the jail physician aware of his injury. Throughout this time period, Defendants Karl Kletzing, M.D., Jane/John Doe, M.D., and Medical Director, Amy Hovis, PA-C, and Justin Pham M.D. were made aware of Mr. Hairston's injury. Yet these Defendants refused to provide any medical care or consultation with Mr. Hairston. Mr. Hairston also continuously asked for pain medication for his foot and leg, but none was provided.

34.     On May 15, 2017, Mr. Hairston completed another sick call request, noting that he had repeatedly informed healthcare personnel that there was a serious problem with his leg, that his injury continued to get worse, and that he needed to see doctor. No care was provided and his request to see a doctor was refused.

35.     On May 16, 2017, Mr. Hairston repeatedly asked Defendants Belanger and Murphy to see a doctor for his ruptured Achilles tendon. He also requested to speak to a lieutenant or a sergeant with regard to his injury. At or about 4:30 p.m., Defendant Earls came to see Mr. Hairston. Mr. Hairston complained to him about his injury, telling him that he had a ruptured Achilles tendon and needed to see a doctor. Defendant Earls disregarded his complaints and ordered Mr. Hairston to be put in disciplinary segregation ("lockup").

36.     On May 17, 2017, Mr. Hairston's partner, Adrian Whitaker called Defendant Sheriff Tim Allen and left him a message informing him that Mr. Hairston had been put in

disciplinary segregation after he had made repeated requests to see a physician for his injured leg. On May 18, 2017, Defendant Allen called Ms. Whitaker back with regard to her May 17, 2017 message and stated that he would look into the matter. Despite this assurance, Defendant Allen did not take immediate action and allowed Mr. Hairston to remain in disciplinary segregation until May 22, 2017.

37.    On May 17, 2017, Mr. Hairston was seen by Defendant Hovis who performed a Thompson test and confirmed that he had indeed ruptured his Achilles tendon and issued an orthopedic consult. Mr. Hairston was not provided any care by a physician or taken to the hospital for surgery. Instead, he was taken back to disciplinary segregation.

38.    On May 22, 2017, Mr. Hairston was transferred to the medical pod and assigned a top bunk. Defendants refused to reassign Mr. Hairston to a lower bunk, despite his confirmed Achilles tendon rupture and repeated requests to Defendant Monica Perkins for a bottom bunk bed.

39.    On May 24, 2017, Defendants finally took Mr. Hairston to see an orthopedic surgeon in Roanoke, Virginia. Because Mr. Hairston did not receive immediate medical attention and timely surgery following his injury on April 24, 2017, he sustained permanent injury and disability to his right lower extremity, which could not be remedied by surgery.

40.    On May 25, 2017, Ms. Whittaker called Defendant Allen and informed him that the Deputies were not providing Mr. Hairston with a bottom bunk despite his injury. Defendant Allen again said that he would look into the matter. Defendant Allen failed to take immediate action and Mr. Hairston was forced to use the top bunk for another two days causing increased pain and suffering.

41.    On May 27, 2017, Ms. Whittaker informed Defendant Allen that Mr. Hairston was not being provided with some of his prescribed pain medications. Defendant Allen advised Ms. Whitaker to complete Power of Attorney forms, which would enable her to directly talk to "Medical" regarding issues related to Mr. Hairston's medical condition as that was an issue within their purview.

42.    Ms. Whittaker completed the Power of Attorney paperwork between May 29, 2017 and June 2, 2017 and returned them to the Jail.  Nonetheless, CCS health care personnel continued to disregard her calls requesting that Mr. Hairston receive his prescribed medications.

43.    On June 5, 2017, Ms. Whittaker again called Defendant Allen to inform him that the CCS health care personnel were not being responsive to her requests for timely administration of pain medication to Mr. Hairston. Defendant Allen took no action to ensure that Mr. Hairston timely received his medications.

44.    On September 5, 2017, Mr. Hairston was released from Roanoke City Jail. A complex surgery was performed on his right Achilles tendon on September 21, 2017. Because surgery was not performed within several weeks of his injury due to Defendants' deliberate indifference to Mr. Hairston's serious medical need, the September 21, 2017 surgery could not fix the damage done by the delay.

45.    As a direct consequence of Defendants' actions and inactions, Mr. Hairston sustained severe and permanent injuries, disfigurement, physical pain, mental anguish, emotional distress, and has otherwise been injured.

## COUNT I
### (§1983 Claim Against Sheriff Allen - Policy or Custom of Deliberate Indifference to Serious Medical Needs)

46.     Plaintiff incorporates and realleges all the preceding paragraphs of this Complaint as set forth herein.

47.     Defendant Allen was the final policymaker for the daily operations of the Jail, including the operations and general inmate care at the Jail, prior to and at the time of Mr. Hairston's injury. Defendant Allen was responsible for operating the Jail so as not to endanger the health and safety of those incarcerated at the Jail, and was responsible for ensuring the provision of constitutionally adequate and timely medical care services to all prisoners at the Roanoke City Jail, including Mr. Hairston.

48.     Defendant Allen had direct, personal, and specific knowledge of the constitutionally inadequate operations, medical care and training at the Jail by which medical care was routinely delayed or denied for serious medical conditions of inmates.

49.     Defendant Allen had direct and specific knowledge that the serious medical needs of Mr. Hairston were going unaddressed, and took no steps to provide adequate and timely medical care to Mr. Hairston.

50.     Defendant Allen knowingly and deliberately failed to implement policies and procedures to ensure constitutionally adequate access to medical care for Roanoke City Jail inmates, including Mr. Hairston, and was deliberately indifferent to the likelihood that inmates would suffer deprivation of their constitutional rights absent efficient and effective protocols for delivery of medical care, including care for serious medical conditions such as Mr. Hairston's.

51.     Defendant Allen knew of the history of deliberate disregard for medical needs of inmates and detainees incarcerated at the Roanoke City Jail and failed to implement policies and

protocols to (i) have sufficient medical staffing at the Jail; (ii) ensure that inmates received timely treatment for serious medical conditions, and (iii) ensure that his deputies, agents and employees appropriately and timely responded to medical needs and secured urgent or specialty care for the inmates.

52.     As a consequence of this policy and/or custom of Defendant Allen, multiple incidents occurred at the Roanoke City Jail where timely medical care was not delivered to inmates with serious medical needs and other medical needs.

**Failure to Train**

53.     Defendant Allen failed to train his deputies, employees, and agents to recognize serious medical conditions, including that of Mr. Hairston.

54.     Defendant Allen failed to train his deputies, employees, and agents to adequately monitor and care for health and safety of inmates at the Jail, including that of Mr. Hairston.

55.     Defendant Allen failed to train his deputies, employees, and agents on appropriate response and/or action to inmates who suffered from a serious medical condition, including that of Mr. Hairston.

56.     Defendant Allen failed to implement protocol and train his deputies, employees, and agents on accommodating inmates' disabilities from injuries sustained at the Jail, including that of Mr. Hairston.

57.     Through his actions and inactions, Defendant Allen, acting under color of state law and pursuant to an official policy or custom, operated and maintained the Jail and trained his deputies, employees, and agents in a deficient manner that posed a risk to the health and safety of the inmates, including Mr. Hairston.

58.     Defendant Allen's actions and inactions as described herein resulted in a policy or custom of deliberate indifference that was the "moving force" behind the failure to treat Mr. Hairston's serious medical condition.

59.     The actions and policies of Defendant Allen as described in this Count I violated the constitutional rights of Mr. Hairston under the Eighth, and Fourteenth Amendments by preventing the administration of necessary medical care thereby causing Mr. Hairston permanent disability.

60.     Defendant Allen's conduct was shocking, outrageous and amounted to a violation of Plaintiff's substantive due process rights under the Fourteenth Amendment.

61.     As a consequence of the above failures, Plaintiff Hairston has been injured as aforesaid.

## COUNT II
### (§1983 Claim Against Sheriff Allen - Policy or Custom of Retaliation/Retribution)

62.     All of the preceding paragraphs are realleged and incorporated by reference herein.

63.     Defendant Allen had direct and personal knowledge of retaliation against inmates and detainees at Roanoke City Jail, including Mr. Hairston for asserting their right to medical care at the Roanoke City Jail.

64.     Defendant Allen adopted a policy and/or custom of deliberate disregard to retaliation levied by deputies against inmates and detainees incarcerated at the Roanoke City Jail for asserting their right to medical treatment.

65.     Defendant Allen knowingly and deliberately failed to implement a protocol to protect inmates from retaliation from deputies for asserting their right for medical treatment.

66.      Pursuant to the policy and custom of Defendant Allen, Plaintiff was retaliated against by being sent to disciplinary segregation for persisting in his request to see a doctor for his untreated Achilles tendon rupture.

67.      Defendant Allen knew that Plaintiff had been retaliated against and took no action to end the retaliation.

68.      Defendant Allen's conduct was shocking, outrageous and amounted to a violation of Plaintiff's substantive due process rights under the Fourteenth Amendment.

69.      As a consequence of Defendant Allen's actions and inactions in this Count, Plaintiff suffered serious and permanent injuries, as aforesaid.

## COUNT III
### (§1983 Claim Against Sheriff Allen - Supervisory Liability)

70.      Plaintiff incorporates and realleges all the preceding paragraphs in this Complaint, as if fully set forth herein.

71.      Defendant Allen was aware or should have been aware that his deputies and/or medical contractors frequently failed to respond to serious medical needs of inmates and detainees at the Jail in an appropriate and timely manner, and that this posed a pervasive and unreasonable risk of injury to inmates, including Plaintiff. Many inmates, including Plaintiff were injured due to the pervasive failure of deputies and/or medical contractors to timely respond to their medical needs.

72.      Defendant Allen took no action to stop this practice, thereby responding in such an inadequate manner as to show deliberate indifference to the risk that constitutional injuries would occur to inmates, including Mr. Hairston.

73.      Defendant Allen was aware or should have been aware that his deputies frequently retaliated against inmates for asserting their right to medical treatment, and that this

posed a pervasive and unreasonable risk of injury to inmates, including Plaintiff. Many inmates, including Plaintiff were injured due to pervasive retaliation levied against them by the deputies for asserting their right to medical treatment.

74.     Defendant Allen took no action to stop this practice, thereby responding in such an inadequate manner as to show deliberate indifference to the risk that constitutional injuries would occur to inmates, including Mr. Hairston.

75.     Defendant Allen was aware for should have been aware that his medical contractors frequently failed to provide inmates and detainees with prescribed medications, and that this posed a pervasive and unreasonable risk of injury to inmates, including Plaintiff. Many inmates, including Plaintiff were injured due to pervasive failure of medical contractors to provide them with prescribed medications.

76.     Defendant Allen took no action to stop this practice, thereby responding in such an inadequate manner as to show deliberate indifference to the risk that constitutional injuries would occur to inmates, including Mr. Hairston.

77.     Defendant Allen knew or should have known that the actions and/or inactions by deputies and/or medical contractors, including Defendant Deputies and CCS Defendants as described herein endangered the health and safety of inmates and detainees.

78.     Defendant Allen failed to take steps to remedy or prevent the danger to the safety of the inmates and detainees at the Jail, by failing to properly manage and supervise the Jail's operations and failing to ensure that appropriate procedures, protocols and disciplinary measures were in place to prevent constitutional deprivations at the Jail including constitutionally required attention to the serious medical needs of inmates and detainees. These failures by Defendant Allen exhibited deliberate indifference to the inmates and detainees' medical needs.

79.     As a direct and proximate result of Defendant Allen's actions and inactions, Defendant Deputies and CCS Defendants failed to timely and appropriately respond to Mr. Hairston's need for medical care for his ruptured Achilles tendon.

80.     As a direct and proximate result of Defendant Allen's actions and inactions, Defendant Deputies retaliated against Mr. Hairston requesting to see a physician to obtain medical care for his ruptured Achilles tendon by placing him in disciplinary segregation.

81.     As a direct and proximate result of Defendant Allen's actions and inactions, CCS Defendants failed to provide Mr. Hairston with prescribed pain medications for his ruptured Achilles tendon.

82.     Defendant Allen's conduct was shocking, outrageous and amounted to a violation of Plaintiff's substantive due process under the Fourteenth Amendment.

83.     As a direct and proximate result of Defendant Allen's actions and inactions, Plaintiff's constitutional rights were violated, and Plaintiff sustained the injuries as described herein.

## COUNT IV
### (§1983 Claim Against Defendant Deputies- Deliberate Indifference to Serious Medical Needs)

84.     All of the preceding paragraphs are realleged and incorporated by reference herein.

85.     The Defendants, Chief Deputy David K. Bell, Sergeant Thomas Boone, Lieutenant Scott Fannin, Officer William Belanger, Officer Murphy, Sergeant Earls, Lieutenant Monica Perkins and Deputies Jane & John Does (the "Defendant Deputies"), interacted with Mr. Hairston on a daily basis and knew that he had sustained a serious injury to his right foot and leg on April 24, 2017.

86.     Upon information and belief, Defendant Chief Deputy Bell and Defendant Deputies conducted surveillance and/or rounds at the Jail to ensure safety of inmates, and knew that Mr. Hairston' had sustained a serious injury to his right foot and leg on April 24, 2017.

87.     The Defendant Deputies knew that Mr. Hairston's injured leg was a serious medical condition and demanded immediate medical attention.

88.     The Defendant Deputies knew that to obtain adequate medical care, Mr. Hairston would need to see the jail physician.

89.     Despite recognizing the need for medical intervention, the Defendant Deputies took no action to obtain appropriate care for Mr. Hairston, and timely consultation with the jail physician.

90.     The Defendant Deputies delayed necessary medical treatment for Mr. Hairston for non-medical reasons and/or prevented Mr. Hairston from receiving needed medical treatment.

91.     The Defendant Deputies limited Mr. Hairston's access to doctors, appropriate diagnostic testing, and to other care that would have determined the cause of Mr. Hairston's medical condition and the appropriate timely solution to those problems.

92.     The Defendant Deputies in their individual capacities, while acting under color of state law, were deliberately indifferent to Mr. Hairston's ruptured Achilles tendon, a serious medical condition.

93.     On April 24, 2017 and thereafter, the Defendant Deputies failed to respond to Mr. Hairston's obvious serious medical needs, failed to respond to his requests to see a physician, failed to provide Mr. Hairston timely access to medical care, and were deliberately indifferent to Mr. Hairston's medical needs.

94.     On May 16, 2017, Defendants Belanger and Murphy refused to respond in any meaningful or timely way to Mr. Hairston's serious medical condition and refused to allow him to see the jail doctor upon Mr. Hairston's request.

95.     Defendant Allen had direct and specific knowledge that the serious medical needs of Mr. Hairston were going unaddressed, and took no steps to provide adequate and timely medical care to Mr. Hairston.

96.     On or about May 16, 2017, Defendant Earls refused to respond in any meaningful or timely way to Mr. Hairston's serious medical condition or to Mr. Hairston's request to see a doctor. In response to Mr. Hairston's repeated requests for medical help, Defendant Earls ordered Mr. Hairston to be put on disciplinary segregation, per Jail policy and/or custom. Defendant Allen knew that Plaintiff had been retaliated against and took no action to end the retaliation.

97.     In addition to failing and refusing to respond to Mr. Hairston's serious medical condition, Defendant Allen and the Defendant Deputies, including Defendant Perkins, refused to allow Mr. Hairston to have a lower bunk after he was released from disciplinary segregation on May 22, 2017, and refused to ensure that he received his pain medication as prescribed. Despite their knowledge that Mr. Hairston had sustained a ruptured Achilles tendon, the Defendant Deputies and Defendant Allen were deliberately indifferent to his medical condition by refusing to make a lower bunk available.

98.     The Defendant Deputies conduct was intentional and/or the product of deliberate indifference to the high risk that a violation of Mr. Hairston's constitutional rights would follow their actions and inaction, and was shocking, outrageous, and amounted to a violation of Mr. Hairston's substantive due process rights under the Eighth and Fourteenth Amendments.

99. As a direct and proximate result of Defendant Deputies' actions and inactions, Plaintiff's constitutional rights were violated, and Plaintiff sustained the injuries as described herein.

## COUNT V
### (§1983 Claim Against CCS Defendants- Deliberate Indifference to Serious Medical Needs)

100. All of the preceding paragraphs are realleged and incorporated by reference herein.

101. All times relevant hereto, Defendant CCS under its contract with the City of Roanoke, and through its servants, agents and employees, including the CCS Defendants had an obligation to ensure Mr. Hairston received adequate medical care.

102. The CCS Defendants provided direct care to Mr. Hairston and were aware of Mr. Hairston's symptoms of a ruptured Achilles tendon.

103. All of the CCS Defendants observed Mr. Hairston's serious medical condition and refused to provide timely and appropriate interventions.

104. Had the CCS Defendants provided timely and appropriate interventions and medical care as soon as they became aware of Mr. Hairston's symptoms, his permanent injury and disability would have been avoided.

105. Through their actions and inactions, as set forth above, the CCS Defendants, while acting under color of state law, acted in a manner that was deliberately indifferent to Mr. Hairston's serious medical condition.

106. The CCS Defendants' actions and omissions were intentional and/or the product of deliberate indifference to the high risk that a violation of Mr. Hairston's constitutional rights

would follow their inaction, and was shocking, outrageous, and amounted to a violation of Mr. Hairston's substantive due process rights under the Eighth and Fourteenth Amendments.

107.    The CCS Defendants knew that the failure to provide Mr. Hairston with timely and adequate medical care was a violation of his constitutional rights under the Eighth and Fourteenth Amendments.

108.    As a direct and proximate result of CCS Defendants' actions and inactions, Plaintiff's constitutional rights were violated, and Plaintiff sustained the injuries as described herein.

**COUNT VI**
**(§1983 Claim Against CCS- Policy or Custom of Deliberate Indifference to Serious Medical Needs of Inmates)**

109.    Plaintiff incorporates and realleges all the preceding paragraphs as if fully set forth herein.

110.    At all times relevant hereto, Defendant CCS maintained a policy or custom of deliberate indifference to the serious medical needs for inmates and detainees, including Mr. Hairston, in the Roanoke City Jail. At all times relevant hereto, CCS acted in a manner that was deliberately indifferent to Mr. Hairston's basic need for medical care thereby violating the Eighth Amendment.

111.    Through their actions set forth above, CCS and the CCS Defendants in their individual capacities, while acting under color of state law, acted in a manner that was deliberately indifferent to Mr. Hairston's basic human needs during his confinement, including his need for medical care, amounting to a violation of Mr. Hairston's Eighth Amendment and Fourteenth Amendment rights. The denial of Mr. Hairston's medical needs by these defendants

is so serious as to implicate the Eighth Amendment's explicit ban on cruel and unusual punishment.

112.    CCS and the CCS Defendants knew that their policy and/or custom of refusing to immediately address inmates' serious medical conditions and refusing to take inmates for needed medical care outside of the jail in order to cut costs was causing serious harm to Mr. Hairston as follows:

      a.  Mr. Hairston suffered a painful and debilitating injury on April 24, 2017;

      b.  Mr. Hairston's serious medical need was obvious to CCS and its employees because he made the severity of the pain known to them, and it was obvious to anyone who saw him that his leg was swollen and he could not ambulate;

      c.  The CCS Defendants did not respond at all to Mr. Hairston's obvious and serious medical needs on and after April 24, 2017; and

      d.  CCS and CCS Defendants did not timely supply Mr. Hairston with prescription medication necessary to ameliorate the pain.

113.    Defendant CCS has implemented and maintained an longstanding unconstitutional policy and/or custom of:

      a.  Failing to adequately staff medical professionals at its facilities, including at the Jail.

      b.  Failing to properly train its employees and agents, and Sheriff's staff with regard to the observation and response to the serious medical needs of inmates, including that of Mr. Hairston.

      c.  Refusing to send inmates including Mr. Hairston to physicians outside of the jail for medical treatment in order to cut costs.

d.  Failing to discipline or remove incompetent staff, including the CCS
    Defendants for failures to provide constitutionally adequate health care
    inmates with serious medical needs, including Mr. Hairston.

e.  Tolerance of and/or acquiescence of constitutional and federal rights
    violations by agents or employees of CCS related to the care, or lack of care
    for inmates, including Mr. Hairston, who suffer serious medical needs while
    incarcerated at the Jail and other facilities.

f.  Tolerance of and/or acquiescence to CCS' employees' and agents' refusals or
    failures to provide medical assessments or evaluations, resulting in no useful
    medical tools to assist in meeting the serious medical needs of inmates,
    including Mr. Hairston.

g.  Tolerance of and/or acquiescence to CCS' employees' and agents' failures to
    respond to calls for medical assistance by inmates and/or Sheriff's deputies
    making such requests on their behalf, as specifically demonstrated by the
    circumstances surrounding Mr. Hairston's ignored and objectively serious
    medical needs.

h.  Tolerance of and/or acquiescence to CCS' employees' and agents' operating
    outside the scope of their license by either failing to promulgate or implement
    appropriate clinical pathways, or by failing to remedy situations where
    nursing personnel and physician assistants make medical judgment calls
    without consulting with a medical doctor, standing order or approved clinical
    pathway.

i.   Tolerance of and/or acquiescence to CCS' employees' and agents' failures to properly monitor and observe inmates medical condition.

j.   Failing to investigate serious negative clinical outcomes of correctional patients at the Jail and other facilities, resulting in failures as described herein to address constitutionally deficient health care practices (including recognition of serious medical needs, evaluation of serious medical needs and response to serious medical needs), which directly resulted in the indifference/inaction to Mr. Hairston's emergency and proximately caused his injuries.

k.   Valuing corporate liability avoidance and financial concerns over patient safety, leading directly to Mr. Hairston's injuries as described herein.

l.   Failing to perform continuous quality improvement ("CQI"), in favor of corporate liability avoidance and corporate financial advantage, leading to Mr. Hairston's injuries as described herein.

114.   CCS' actions and inactions as described herein resulted in a policy or custom of deliberate indifference that was a "moving force" behind the failure to address Mr. Hairston's serious medical needs, and resulting in his injuries.

115.   Because of this policy or custom of indifference, Defendant CCS's medical operations (or lack thereof) at the Jail posed a recognizable and patent risk to the health and safety of the inmates, including Mr. Hairston.

116.   The policy or custom was manifest in certain affirmative decisions and omissions by Defendant CCS, as well as by a persistent and widespread practice of deliberate indifference to the needs of the inmates and detainees sufficient to constitute an official custom of CCS.

Defendant CCS' failure to act despite its knowledge of a pattern of constitutional deprivations, including prior litigation related to its policy and custom of indifference, as well as ongoing and pervasive lack of proper operations, staffing, discipline, review and training to deal with these deprivations, was completely inadequate to address and remedy the unconstitutional policy and custom that caused Mr. Hairston's harm.

117.   Defendant CCS, through its high ranking officers, legal staff, medical directors and other agents had direct and specific knowledge of the constitutionally inadequate operations, training, discipline and medical care at the Jail and engaged in an official policy or custom manifesting in deliberate indifference to the serious medical needs of the inmates and detainees, including Mr. Hairston. CCS' actions and inactions in implementing its policy and custom were shocking, outrageous, and constituted a violation of Mr. Hairston's substantive due process rights under the Eighth and Fourteenth Amendments.

118.   As a direct and proximate result of Defendant CCS' actions and inactions, Mr. Hairston's constitutional rights were violated, and Plaintiff sustained the injuries as described herein.

## COUNT VII
### (Negligence- CCS Defendants)

119.   Plaintiff incorporates and realleges all the preceding paragraphs as if fully set forth herein.

120.   At all times relevant hereto, the CCS Defendants owed Mr. Hairston the duty to exercise that degree of care, skill and diligence ordinarily exercised by similarly trained and experienced health care providers under similar circumstances. These employees and agents were acting within the scope of their employment and/or agency with CCS and it us therefore

liable for their actions in connection therewith pursuant to the doctrine of *respondeat superior* and/or agency.

121.  Notwithstanding said duties, the CCS Defendants were negligent and failed to act in accordance with their duties.

122.  The CCS Defendants breached the standard of care as described above and in numerous other ways including but not limited to:

a)  Failing to provide Mr. Hairston with immediate medical attention following his injury;

b)  Failing to assess Mr. Hairston's injured Achilles tendon despite his repeated complaints of severe pain;

c)  Failing to rule out Achilles tendon rupture when an X-ray was performed on April 30, 2017.

d)  Failing to adequately monitor or assess Mr. Hairston's ruptured Achilles tendon for weeks;

e)  Failing to perform a Thompson test until May 17, 2017;

f)  Failing to order an MRI for Mr. Hairston;

g)  Failing to schedule an appointment with an outside specialist surgeon for a month;

h)  Failing to dispense pain medication for Mr. Hairston's injuries; and

i)  Failing to comply with National Commission Correctional Health Care ("NCCHC") and American Correctional Association (" ACA") standards

123.    The CCS Defendants owed Mr. Hairston the duty to exercise the degree of care, skill, and diligence ordinarily exercised by licensed care providers in the hiring, training, supervision, and retention of appropriate personnel.

124.    As a direct and proximate result of CCS and CCS Defendants' breach of duty, Mr. Hairston suffered substantial injuries and damages.

**COUNT VIII**
**(Third Party Beneficiary Breach of Contract Claim - CCS)**

125.    All of the preceding paragraphs are realleged and incorporated by reference herein.

126.    Defendant CCS and the City of Roanoke entered into a contract for CCS to provide health care services to all prisoners residing at Roanoke City Jail.

127.    As an inmate at Roanoke City Jail, Plaintiff was the intended beneficiary of the contract between Roanoke City and CCS.

128.    Pursuant to the contract with the City of Roanoke, CCS agreed to:

   (a) Arrange for and have emergency and non-emergency ambulance services for inmates;

   (b) Provide medical personnel on site 24/7 to manage urgent and emergent issues arising at the Jail;

   (c) Conduct a sick call triage at least once per day seven days a week, including holidays;

   (d) Conduct timely sick call triage within twenty-four (24) hours of request;

   (e) Provide inmates at the Jail with sick call consultation when appropriate;

   (f) Schedule sick call clinics at least five (5) days a week (Monday through Friday);

(g) Conduct all sick call services at the supervision of the Medical Director;

(h) Arrange and bear the cost for pathology and radiology services ordered by a CCS physician for the Inmates;

(i) Arrange on-site pathology and radiology services to the extent reasonably possible;

(j) Make appropriate off-site arrangements for rendering pathology and radiology care to the extent services are required but cannot be rendered on-site;

(k) Have a CCS authorized physician make determination and refer inmates for Specialty Services when deemed medically necessary;

(l) Arrange and bear the cost for on-site or off-site Specialty Services to the extent that it is determined that an Inmate requires specialty medical services;

(m) Have CCS medical technicians pass medication to Inmates requiring medications authorized by the CCS physician four (4) times a day in general population, and more frequently as medical necessary;

(n) Ensure that an inmate does not miss a necessary dose, when in control of CCS;

(o) Institute continuous quality improvement (CQI) program that monitor the health services provided to the Inmate population of the Jail, including peer reviews, audit and medical chart review procedures;

(p) Ensure compliance with National Commission Correctional Health Care ("NCCHC") and American Correctional Association (" ACA") standards;

129.    CCS knew that the inmates at Roanoke City Jail depended upon CCS' performance under its contract in order to receive adequate and timely medical care.

130.   CCS breached the contract with Roanoke City by:

(a)  Refusing to provide any medical care to Mr. Hairston after his injury on April 24, 2017;

(b)  Refusing to allow Mr. Hairston to see a doctor after his injury on April 24, 2017;

(c)  Refusing to arrange for emergency services for Mr. Hairston after his injury on April 24, 2017;

(d)  Refusing to conduct timely sick call triage within twenty-four (24) hours of Mr. Hairston's request to see a physician;

(e)  Refusing to conduct sick call services at the supervision of the Medical Director;

(f)  Refusing to have the CCS' licensed physician make the determination to refer Mr. Hairston to an outside specialist surgeon;

(g)  Refusing to make arrangements to make arrangements for Mr. Hairston to see an outside specialist surgeon;

(h)  Refusing to provide appropriate pain medication to Mr. Hairston as prescribed;

(i)  Failing to institute continuous quality improvement program to monitor the health services provided to the Inmate population of the Jail, including peer reviews, audit and medical chart review procedures; and

(j)  Failing to ensure its employees' and contractors' compliance with National Commission Correctional Health Care ("NCCHC") and American Correctional Association ("ACA") standards.

131.   As a direct and proximate result of CCS's breaches of contract, Plaintiff suffered damages as aforesaid.

## REQUEST FOR RELIEF DEMANDED

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, and requests compensatory damages in the amount of ten million dollars ($10,000,000), and interest, costs, and attorney fees related to the statutory claims.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all appropriate claims set forth above.

Respectfully submitted,

ANTHONY IVAN HAIRSTON
Of Counsel

R. Bruce Fickley
Virginia Bar No. 29776
Law Office of R. Bruce Fickley, P.C
P.O. Box 4005
Roanoke, VA. 24015
Tel No. (540) 345-9929
Fax No. (540) 345-3091
fickley@cox.net
*Counsel for Plaintiff*

Harvey S. Williams
Virginia Bar No. 20857
Williams Legal Group
2141 Wisconsin Avenue, N.W.
Suite N3
Washington, D.C. 20007
Tel. No. (202) 462-5900
Fax No. (202) 462-5904
hsw@williamslegalgroup.com
*Counsel for Plaintiff*