Clerk's Office
U. S. District Court
**FILED**
3/5/2020

Julia C. Dudley, Clerk
By: /s/ Susan Moody
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|                               |   |                                        |
|-------------------------------|---|----------------------------------------|
| ANTHONY IVAN HAIRSTON,        | ) |                                        |
|                               | ) | Civil Action No. 7:19CV00328           |
| Plaintiff,                    | ) |                                        |
|                               | ) | **MEMORANDUM OPINION**                 |
| v.                            | ) |                                        |
|                               | ) | By: Hon. Glen E. Conrad                |
| SHERIFF TIM ALLEN, et al.,    | ) | Senior United States District Judge    |
|                               | ) |                                        |
| Defendants.                   | ) |                                        |

Anthony Ivan Hairston, a former inmate at the Roanoke City Jail, filed this action under 42 U.S.C. § 1983 against Roanoke City Sheriff Tim Allen and eighteen other defendants, claiming that he was denied medical care after suffering an Achilles tendon rupture. Sheriff Allen and Deputies William Belanger, James Murphy, John Earls, and Monica Perkins (collectively, the "Defendant Deputies," and with Sheriff Allen, the "Sheriff Defendants") have moved to dismiss the claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The motion has been fully briefed, and the court heard oral argument on December 17, 2019. For the reasons that follow, the motion will be granted in part and denied in part.

## Background

The following factual allegations, taken from the complaint, are accepted as true for purposes of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

---

[1] The motion to dismiss was also filed on behalf of Chief Deputy David Bell, Sergeant Thomas Boone, and Lieutenant Scott Fannin. However, on January 17, 2020, Hairston voluntarily dismissed his claims against Bell, Boone, and Fannin, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

Hairston was incarcerated at the Roanoke City Jail (the "Jail") from September 2016 to September 2017.[2] Compl. ¶ 4, ECF No. 1. During that time, Sheriff Allen was responsible for operating the Jail and ensuring the care of the Jail's inmates. Id. ¶ 5. Deputies in Sheriff Allen's office, including the Defendant Deputies, guarded the inmate pods 24 hours a day. Id. ¶¶ 7, 20. Defendant Wellpath LLC, formerly known as Correct Care Solutions, LLC ("CCS"), contracted with the City of Roanoke to provide medical, dental, and psychiatry services to inmates at the Jail. Id. ¶¶ 8–9.

On April 24, 2017, at approximately 7:30 a.m., "Hairston sustained a painful rupture to his right Achilles tendon." Id. ¶ 22. As he was getting down from his top bunk, Hairston's right foot struck the metal bar on the bed. Id. "He heard a popping sound and his foot flapped, causing intense pain." Id. Hairston could not put pressure on his right foot, his foot and leg began to swell, and he could only walk by limping. Id. Hairston alleges that his "limp and swollen foot and leg were readily observable to anyone near him." Id.

At approximately 8:00 a.m., Hairston limped to obtain his high blood pressure medication from CCS personnel. Id. ¶ 23. He informed Defendant Deanna Bernard, a CCS employee, about his injury. Id. "Hairston showed his leg to Defendant Bernard, and told her, 'Something's wrong. Something popped. It's flapping. It's swollen. It's serious. I need to see the doctor immediately.'" Id. Despite Hairston's complaints, "Defendant Bernard provided no nursing or medical assistance . . . and made no arrangements for him to see the doctor." Id.

Later that afternoon, Defendant Bernard returned to the pod to administer medication to the inmates. Hairston showed Defendant Bernard his swollen right foot and leg, and asked to see the doctor. Id. ¶ 24. Once again, Defendant Bernard "provided no nursing or medical assistance" and "made no arrangements for [Hairston] to see the doctor." Id.

---

[2] Online court records indicate that Hairston was convicted of an offense for which he was sentenced to an active period of incarceration of more than one year.

Throughout the day, Hairston also showed his injured foot and leg to the Defendant Deputies on duty, and "told them that he needed to see the doctor immediately because he had been seriously injured." Id. ¶ 26. However, none of the Defendant Deputies took any action to obtain nursing or medical care for Hairston. Id.

Over the next several days, Hairston continued to complain to CCS personnel who entered the pod. Id. ¶¶ 27–30. Although his pain, swelling, and limp were readily observable, "no medical care was provided or obtained . . . by CCS personnel." Id. ¶ 27.

On April 27 or 28, 2017, Hairston submitted a written sick-call request to see a physician for his injury. Id. ¶ 31. On April 30, 2017, a radiology technician x-rayed Hairston's right foot and leg. Id. The x-ray was ordered by Amy Hovis, a physician's assistant, and read by Dr. Justin Pham. However, "[n]o health care provider, including Defendant Hovis, Defendant Pham, or any other physician ever saw . . . Hairston or took any steps to address [his] severe pain and disability." Id.; see also id. (emphasizing that "[n]o medical care was provided").

Hairston's pain worsened over the next few weeks, his right leg remained swollen, and he could not put any pressure on it. Id. ¶ 32. Hairston repeatedly asked the Defendant Deputies to assist him in obtaining medical treatment. Id. However, his requests were "ignored." Id. Likewise, CCS personnel "refused to provide any medical care or consultation." Id. ¶ 33. Although Hairston continuously asked for pain medication, "none was provided." Id.

On May 15, 2017, Hairston completed another sick-call request. Id. ¶ 34. Hairston noted that he had repeatedly informed healthcare personnel that there was a serious problem with his leg, that his injury had worsened, and that he needed to see a doctor. Id. Once again, "[n]o care was provided and his request to see a doctor was denied." Id.

On May 16, 2017, Hairston "repeatedly asked Defendants Belanger and Murphy to see a doctor for his ruptured Achilles tendon." Id. ¶ 35. Hairston alleges that Belanger and Murphy

"refused to respond in any meaningful or timely way to [his] serious medical condition and refused to allow him to see the jail doctor." Id. ¶ 94.

That same day, Hairston asked to speak to a lieutenant or sergeant regarding his injury. Id. ¶ 35. At approximately 4:30 p.m., Defendant Earls went to see Hairston. Id. Hairston complained to Earls about his injury and emphasized that he needed to see a doctor. Id. Hairston alleges that Earls disregarded his complaints and ordered that he be placed in disciplinary segregation. Id.

On May 17, 2017, Hairston's partner, Adrian Whittaker, called Sheriff Allen and left a message informing him that Hairston had been placed in disciplinary segregation after requesting medical treatment for his injured leg. Id. ¶ 36. On May 18, 2017, Sheriff Allen advised Whitaker that he would investigate the matter. However, despite this assurance, Sheriff Allen allowed Hairston to remain in disciplinary segregation until May 22, 2017. Id.

In the meantime, Hairston was finally seen by Defendant Hovis, "who performed a Thompson test and confirmed that he had indeed ruptured his Achilles tendon and issued an orthopedic consult." Id. ¶ 37. On May 22, 2017, Hairston was transferred to the medical pod, where he was assigned a top bunk. Id. ¶ 38. "[D]espite his confirmed Achilles tendon rupture and repeated requests to Defendant Monica Perkins for a bottom bunk bed," Perkins and other employees refused to reassign Hairston to a lower bunk. Id.

On May 24, 2017, Hairston was taken to see an orthopedic surgeon. Hairston alleges that because he "did not receive immediate medical attention and timely surgery following his injury on April 24, 2017, he sustained permanent injury and disability to his right lower extremity, which could not be remedied by surgery." Id. ¶ 39.

On May 25, 2017, Whittaker called Sheriff Allen again and advised him that deputies had refused to provide Hairston with a bottom bunk despite his injury. Id. ¶ 40. Although Sheriff

Allen told Whittaker that he would look into the matter, he did not take immediate action. Id. As a result, "Hairston was forced to use the top bunk for another two days causing increased pain and suffering." Id.

On May 27, 2017, Whittaker informed Sheriff Allen that Hairston was not being provided with his prescribed pain medications. Id. ¶ 41. Sheriff Allen advised Whittaker to complete power-of-attorney forms, which would enable her to communicate directly with the medical department regarding Hairston's condition. Id. Although Whittaker returned the required forms to the jail, CCS personnel "continued to disregard her calls requesting that Mr. Hairston receive his prescribed medications." Id. ¶ 42.

On June 5, 2017, Whittaker called Sheriff Allen and informed him that CCS personnel were not still not administering Hairston's prescribed pain medications. Id. ¶ 43. Hairston alleges that Sheriff Allen "took no action to ensure that [he] timely received his medications." Id.

On September 5, 2017, Hairston was released from the Roanoke City Jail. Id. ¶ 44. Approximately two weeks later, Hairston underwent surgery on his right Achilles tendon. Id. Hairston alleges that because the surgery was not performed within several weeks of his injury, "the September 21, 2017 surgery could not fix the damage done by the delay." Id. Hairston further alleges that "[a]s a direct consequence of Defendants' actions and inactions, [he] sustained severe and permanent injuries, disfigurement, physical pain, mental anguish, [and] emotional distress." Id. ¶ 45.

**Procedural History**

Hairston filed this action under 42 U.S.C. § 1983 on April 23, 2019. In addition to the Sheriff Defendants, Hairston named CCS and various CCS personnel as defendants (collectively,

the "CCS Defendants"). Each of the Sheriff Defendants has been sued in his or her individual capacity. <u>See</u> <u>id.</u> ¶¶ 5–7.

In Count I of the complaint, Hairston claims that Sheriff Allen was responsible for a policy or custom of deliberate indifference to the serious medical needs of inmates at the Jail. In Count II, Hairston claims that Sheriff Allen was responsible for a policy or custom of retaliation against inmates who requested medical care. In Count III, Hairston claims that Sheriff Allen is subject to supervisory liability for the alleged violations of Hairston's constitutional rights. In Count IV, Hairston claims that the Defendant Deputies acted with deliberate indifference to his serious medical needs, in violation of the Eighth and Fourteenth Amendments to the United States Constitution, and that their conduct "amounted to a violation of . . . Hairston's substantive due process rights." Compl. ¶ 98. In Counts V through VIII, Hairston asserts claims under § 1983 and Virginia law against the CCS Defendants.

The Sheriff Defendants have moved to dismiss the claims against them under Rule 12(b)(6).[3] The motion has been fully briefed and argued and is now ripe for disposition.

<u>**Standard of Review**</u>

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. <u>Erickson</u>, 551 U.S. at 94. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive

---

[3] The CCS Defendants filed an answer to the complaint, rather than a motion to dismiss.

dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" meaning that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

## Discussion

### I.      Claims against the Defendant Deputies

Consistent with the parties' briefs, the court will first address Hairston's claims against the Defendant Deputies under 42 U.S.C. § 1983. "Section 1983 . . . is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 243 (4th Cir. 2017) (citing Graham v. Connor, 490 U.S. 386, 393–94 (1989)). The statute imposes civil liability on any person who, acting under color of state law, deprives another person of rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Accordingly, in any action under § 1983, the court must begin its analysis by identifying the precise constitutional or statutory violation that the defendants allegedly committed. See Safar, 859 F.3d at 245 ("The first step in any such claim is to pinpoint the specific right that has been infringed.") (citing Baker v. McCollan, 443 U.S. 137, 140 (1979)).

In this case, Hairston "alleges violations of the Eighth and Fourteenth Amendments." Compl. at 5. More specifically, Hairston claims that the Defendant Deputies acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment, and that their conduct "amounted to a violation of . . . Hairston's substantive due process rights" under the Fourteenth Amendment. Compl. ¶ 98.

**A.     Substantive Due Process**

Turning first to the substantive due process claim, the court agrees with the Sheriff Defendants that substantive due process is not the appropriate framework through which to evaluate Hairston's allegations of inadequate medical care and treatment while incarcerated. The Supreme Court has made clear that "[i]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) (citing Graham, 490 U.S. at 394). It is well-established that "deliberate indifference to an inmate's medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).[4] "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104 (footnotes omitted).

Applying these principles, the court concludes that Hairston's claim against the Defendant Deputies falls under the Eighth Amendment, rather than the Fourteenth Amendment's substantive due process guarantees. As noted above, online court records indicate that Hairston was a convicted inmate at the time of the events on which he bases his claims. Because the Eighth Amendment provides an explicit source of protection for the right that the Defendant Deputies allegedly violated, it governs the analysis of Hairston's claim under § 1983. Accordingly, the substantive due process claim against the Defendant Deputies will be dismissed under Rule 12(b)(6). See O'Brien v. Mich. Dep't of Corr., 592 Fed. Appx. 338, 344 (6th Cir. 2014) ("To the extent [plaintiff] asserted that the defendants' conduct violated his substantive

---

[4] "The Eighth Amendment's proscription of cruel and unusual punishment is applicable to the States through the Fourteenth Amendment." Gordon v. Schilling, 937 F.3d 348, 356 n.11 (4th Cir. 2019).

due process rights, the district court properly dismissed such claim. [Plaintiff's] allegations concerned the denial of medical care, thus, [t]he Eighth Amendment is the primary source of substantive protection available to him.") (internal quotation marks and citations omitted)); Cooleen v. Lamanna, 248 Fed. Appx. 357, 362 (3d Cir. 2006) ("[Plaintiff] can properly invoke the Eighth Amendment to challenge issues relating to his medical care. The very viability of his Eighth Amendment claims means that his substantive due process claims are without merit[.]").

**B.**     **Deliberate Indifference in Violation of the Eighth Amendment**

The Sheriff Defendants also argue that the complaint fails to state a claim under the Eighth Amendment against the Defendant Deputies. For the following reasons, the court disagrees.

As indicated above, the Eighth Amendment prohibits correctional officials from acting with deliberate indifference to an inmate's serious medical needs. See Estelle, 429 U.S. at 106. A claim of deliberate indifference has two components. "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017).

"The objective component of a deliberate indifference claim is satisfied by a serious medical condition." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (citing Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016)). A serious medical condition is one that has either "been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks and citation omitted).

"The subjective component is satisfied by proof of a defendant's deliberate indifference." Gordon, 937 F.3d at 357. The Supreme Court has explained that "deliberate indifference entails

something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "In the context of a claim related to the denial of medical treatment, a defendant 'acts with deliberate indifference if he had actual knowledge of the [plaintiff's] serious medical needs and the related risks, but nevertheless disregarded them.'" Gordon, 937 F.3d at 357 (quoting DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018)). A plaintiff can satisfy the subjective knowledge requirement through direct evidence of a defendant's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence that the defendant knew of a substantial risk from the very fact that the risk was obvious. Id.

"The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis omitted). When a deliberate indifference claim is predicated on a delay in medical care, the United States Court of Appeals for the Fourth Circuit has "ruled that there is no Eighth Amendment violation unless 'the delay results in some substantial harm to the [plaintiff],' such as a 'marked' exacerbation of the [plaintiff's] medical condition or 'frequent complaints of severe pain.'" Id. (emphasis omitted) (quoting Webb v. Hamidullah, 281 F. App'x 159, 166–67 (4th Cir. 2007)); see also Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain.") (internal quotation marks omitted).

With this framework in mind, the court turns to Hairston's claim against the Defendant Deputies. Upon review of the complaint, the court is convinced that Hairston has adequately

alleged the existence of a serious medical need sufficient to satisfy the objective component of his claim of deliberate indifference. As summarized above, Hairston alleges that he ruptured his right Achilles tendon on April 24, 2017, which caused intense pain and swelling, and prevented him from putting pressure on his right foot. Compl. ¶ 22. "Courts have generally agreed that a ruptured Achilles tendon is a serious medical need." Bradford v. Owens, No. 3:11-cv-00488, 2016 U.S. Dist. LEXIS 164200, at *24 (W.D. Ky. Nov. 29, 2016) (collecting cases); see also Navarro v. Wexford Health Sources, No. 3:18-cv-00143, 2018 U.S. Dist. LEXIS 24253, at *13 (S.D. Ill. Feb. 14, 2018) ("The Court finds that Plaintiff's ruptured Achilles tendon constitutes a serious medical need so as to satisfy the objective standard."). Consistent with these decisions, the court concludes that Hairston's injury was sufficiently serious to satisfy the objective component.

The court turns now to the subjective component of the deliberate indifference analysis— whether Hairston has adequately alleged that the Defendant Deputies "had actual knowledge of [his] serious medical needs and the related risks, but nevertheless disregarded them." DePaola, 884 F.3d at 486. As indicated above, this component is "subject to demonstration in the usual ways, including inference from circumstantial evidence." Farmer, 511 U.S. at 842. "A factfinder is entitled, in appropriate circumstances, to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" Formica, 739 F. App'x at 757 (quoting Farmer, 511 U.S. at 842). "Indeed, jail officials 'may not simply bury their heads in the sand and thereby skirt liability' by, for example, refusing to 'verify underlying facts that [they] strongly suspected to be true, or . . . declin[ing] to confirm inferences of risk that [they] strongly suspected to exist.'" Id. (quoting Makdessi v. Fields, 789 F.3d 126, 133–34 (4th Cir. 2015)). "Similarly, a factfinder may conclude that the official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his

response to the risk was inappropriate under the circumstances." Parrish v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004).

Applying these principles, the court concludes that Hairston has plausibly alleged that the Defendant Deputies acted with deliberate indifference to his serious medical needs. According to the complaint, each of the Defendant Deputies worked in the pod to which Hairston was assigned and was aware of his injury. Despite being shown Hairston's injured foot and leg, and notwithstanding that Hairston's "pain, swelling, and limp were readily observable," none of the Defendant Deputies "took any action to obtain nursing or medical care." Compl. ¶¶ 26–27. Instead, over the next several weeks, each of the Defendant Deputies "ignored" Hairston's complaints of worsening pain and his "repeated[]" requests to see a physician, and Defendant Earls ultimately ordered that Hairston be placed in disciplinary segregation. Id. ¶¶ 32, 35. Hairston was not physically examined by a physician or physician's assistant until May 17, 2017, more than three weeks after the injury occurred. Id. ¶¶ 30, 37. Even after Defendant Hovis confirmed that Hairston had ruptured his Achilles tendon, Hairston was forced to sleep in an upper bunk, "despite his . . . repeated requests . . . to Defendant Monica Perkins for a bottom bunk bed." Id. ¶ 38.

Viewing the allegations in the light most favorable to Hairston, as the court must at this stage of the litigation, the court concludes that Hairston has adequately alleged that the Defendant Deputies were aware that he had suffered a painful injury, and that they "intentionally ignored the situation and refused to seek medical assistance." Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986). Such inaction on the part of jail officials, in the face of an obvious need for medical treatment, provides a reasonable basis for finding deliberate indifference. Id.; see also Scinto, 841 F.3d at 232 (holding that the outward signs of the plaintiff's need for medical attention and the defendants' contemporaneous failure to offer aid gave rise to an inference of

deliberate indifference); Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (emphasizing that "government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs").

Likewise, the actions allegedly taken by Defendants Earls and Perkins in response to Hairston's complaints of pain and pleas for assistance—namely, placing Hairston in disciplinary segregation and refusing to move him to a bottom bunk—support a plausible inference of deliberate indifference at this stage of the proceedings. See, e.g., Barefoot v. Derry, No. 5:09-cv-03143, 2011 U.S. Dist. LEXIS 75796, at *9–12 (E.D.N.C. July 11, 2011) (holding that the plaintiff adequately alleged a claim of deliberate indifference based on the defendants' alleged refusal to provide him with a bottom bunk assignment).

In moving to dismiss the claim against the Defendant Deputies, the Sheriff Defendants argue that deputies "are not medical personnel," and that they "are entitled to have relied on the judgments of the medical personnel with respect to plaintiff's medical issues." Sheriff Defs.' Br. Supp. Mot. Dismiss 18, ECF No. 13. The Sheriff Defendants cite to cases recognizing that correctional officials can generally defer to the treatment decisions of trained medical staff. See, e.g., Iko, 535 F.3d at 242 ("If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting Spruill v. Gillis, 372 F.3ed 218, 236 (3d Cir. 2004)); see also Miltier v. Beorn, 896 F.2d 848, 854–55 (4th Cir. 1990) (holding that prison officials were not subject to supervisory liability for the conduct of subordinate medical personnel).

The problem with the Sheriff Defendants' argument is two-fold. First, as was true in Iko, Hairston is not seeking to hold the Defendant Deputies liable for the actions or inactions of the CCS personnel. Instead, the Defendant Deputies "face liability for their own decisions," made while Hairston "was in their charge." Iko, 535 F.3d at 242 (emphasis in original). Therefore, at

least at this stage of the litigation, the proposition "that a distant prison official can generally rely on his medical staff's examinations and diagnoses" appears to be "irrelevant to the issue before [the court]." Id. Additionally, Hairston specifically alleges that no medical treatment was provided by the CCS personnel who entered his pod, and that he was not actually examined by a doctor or physician's assistant until May 17, 2017, more than three weeks after the injury occurred. Thus, with respect to the intervening period, the complaint plausibly suggests that there was "no medical opinion to which the officers could have deferred."[5] Id. (emphasis omitted).

Finally, to the extent that Hairston's claim against the Defendant Deputies is predicated on a delay in obtaining medical treatment, Hairston has adequately alleged that he suffered substantial harm as a result of the delay. According to the complaint, the delay in treatment "exacerbated the injury" and resulted in "unnecessarily prolonged" pain and swelling. Sharpe, 261 F. App'x at 734.

For all of these reasons, the court concludes that Hairston's complaint states a plausible claim of deliberate indifference against the Defendant Deputies.

## II.     Claims Against Sheriff Allen

Hairston's complaint also names Sheriff Allen as a defendant in his "individual capacity." Compl. ¶ 5. In Counts I and II, Hairston seeks to hold Sheriff Allen liable for maintaining a "policy or custom of deliberate indifference to the serious medical needs" of

---

[5] The court recognizes that an x-ray was performed by a technician on April 30, 2017, six days after Hairston's injury. However, Defendant Hovis, who ordered the x-ray, did not actually see Hairston until May 17, 2017, and Hairston alleges that he did not receive any treatment for his injury during the intervening period. Even assuming that the Defendant Deputies were aware of the initial x-ray, Hairston's continued complaints of pain and swelling "would have put defendants on notice that additional care was required." Cooper, 814 F.2d at 945; see also Scinto, 841 F.3d at 234 n.7 ("[T]his court has held that 'just because [prison officials] have provided [an inmate] with some treatment . . . it does not follow that they have necessarily provided h[im] with constitutionally adequate treatment.'" (alterations in original) (quoting De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013)).

inmates and detainees, and a "policy or custom of retaliation." Id. at 16, 18. In Count III,

Hairston asserts a claim of "supervisory liability" under § 1983. Id. at 19.

### A. Policy or Custom of Deliberate Indifference and Retaliation

Because Sheriff Allen is sued in his individual capacity, the court agrees with the Sheriff

Defendants that the "policy or custom" claims asserted in Counts I and II are subject to

dismissal. The Fourth Circuit has explained that "[d]ebating whether a public [official] has

adopted an unconstitutional 'custom' or 'policy' is a question to be asked when examining the

basis for municipal liability under § 1983," and "is not the right question to ask when

confronting a supervisor's potential liability in his individual capacity." Mikkelsen v. DeWitt,

141 F. App'x 8, 91 (4th Cir. 2005) (emphasis in original). Instead, "where the only . . . claims

are against a public official in [his] individual capacity, to hold the official liable for [a]

subordinate's conduct, that 'conduct must meet the test for supervisory liability.'" Dawkins v.

Arthur, 701 F. App'x 191, 193 (4th Cir. 2017) (quoting Mikkelsen v. DeWitt, 141 F. App'x at

90). Because Hairston asserts a separate claim for supervisory liability in Count III, Counts I and

II will be dismissed under Rule 12(b)(6).

### B. Supervisory Liability

Under § 1983, a supervisory official may be held liable "where it is affirmatively shown

that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge v.

Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). "The doctrine of respondeat superior has no

application under this section." Id. Thus, while Sheriff Allen is not subject to vicarious liability

for the conduct of his subordinates, Sheriff Allen may be held liable if he "had personal

knowledge of and involvement in the alleged deprivation of [the plaintiff's] rights." Wright v.

Collins, 766 F.2d 841, 850 (4th Cir. 1985); see also Matthews v. City of E. St. Louis, 675 F.3d

703, 708 (7th Cir. 2012) (explaining that personal involvement is shown if a supervisor knows

about the conduct and approves it, condones it, or turns a blind eye for fear of what he might see).

In <u>Wright</u>, the Fourth Circuit held that summary judgment was inappropriate on the issue of whether a prison warden was subject to liability for the alleged violation of the plaintiff's Eighth Amendment rights. <u>Id.</u> The Court explained that "[r]eceipt of letters by prison officials may be evidence of personal knowledge of unconstitutional conditions," and that such notice of alleged harm by others can "facilitate personal involvement in a deprivation of rights where the harm continues over a period of time." <u>Id.</u> The Fourth Circuit also emphasized that a warden "presumably has broad authority over the prison." <u>Id.</u> Consequently, the Court held that the plaintiff "may be able to show sufficient personal involvement stemming from [the defendant's] duties as [w]arden or from his receipt of notification from [the plaintiff] to establish a basis for § 1983 liability." <u>Id.</u>

In this case, Hairston alleges that Sheriff Allen had broad authority over "the daily operations of the Jail," and "was responsible for ensuring the provision of constitutionally adequate and timely medical care services" to the Jail's inmates. Compl. ¶ 47. Hairston further asserts that Sheriff Allen "had direct and specific knowledge that [Hairston's] medical needs . . . were going unaddressed, and took no steps to provide adequate and timely medical care." <u>Id.</u> ¶ 49. For instance, after Hairston was diagnosed with a ruptured Achilles tendon, his partner personally notified Sheriff Allen that deputies were refusing to provide Hairston with a bottom bunk despite his injury. Hairston alleges that Sheriff Allen failed to take timely action, and that he was "forced to use the top bunk for another two days causing increased pain and suffering." <u>Id.</u> ¶ 40. Similarly, on two occasions after Hairston was taken to see an orthopedic surgeon, his partner advised Sheriff Allen that Hairston was not receiving his prescribed pain medications.

Id. ¶¶ 41, 43.  Once again, according to the complaint, Sheriff Allen "took no action to ensure that Mr. Hairston timely received his medications."  Id. ¶ 43.

Viewing the allegations in the light most favorable to Hairston, the court concludes that Hairston has adequately asserted that Sheriff Allen "had personal knowledge of and involvement in the alleged deprivation" of Hairston's rights under the Eighth Amendment.  Wright, 766 F.2d at 850.  Succinctly stated, Hairston plausibly alleges that Sheriff Allen acted with deliberate indifference to his serious medical needs by failing to respond to complaints about Hairston's medical treatment or lack thereof.  See Sims v. Clarke, No. 7:18-cv-00444, 2019 U.S. Dist. LEXIS 200994, at *8 (W.D. Va. Nov. 20, 2019) (applying Wright and holding that the plaintiff plausibly alleged that the supervisory defendants "were deliberately indifferent to [the plaintiff's] serious medical needs by their response, or failure to respond, to [the plaintiff's] complaints about his medical treatment"); see also Gordon, 937 F.3d at 358 (concluding that a supervisory official was not entitled to summary judgment where the plaintiff produced evidence, including grievances, demonstrating that the official had knowledge of the plaintiff's serious medical condition and his lack of treatment); DePaola, 884 F.3d at 488 (holding that the plaintiff's allegations of deliberate difference were sufficient to state a claim against the warden where the plaintiff alleged that the warden was aware of his serious mental health needs and failed to provide necessary treatment); Hemingway v. Gosa, No. 1:19-cv-00583, 2019 U.S. Dist. LEXIS 139144, at *21 (M.D. Pa. Aug. 16, 2019) (concluding that the plaintiff set forth a plausible Eighth Amendment claim against the warden where the plaintiff alleged that he had informed the warden that he was not receiving his prescribed medication).  Accordingly, Hairston states a viable claim under the Eighth Amendment against Sheriff Allen.[6]

---

[6] To the extent that Hairston also alleges that Sheriff Allen's conduct "amounted to a violation of Plaintiff's substantive due process under the Fourteenth Amendment," Compl. ¶ 83, such claim is subject to dismissal for the same reason as the substantive due process claim against the Defendant Deputies.

### III.     **Qualified Immunity**

Having determined that the complaint states plausible Eighth Amendment claims against the Sheriff Defendants, the court must address the Sheriff Defendants' argument that they are entitled to qualified immunity.  The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "In determining whether defendant government officials are protected by qualified immunity, the court considers 'both whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established at the time of the conduct in question.'"  Scinto, 841 F.3d at 235 (quoting Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)).

For the reasons explained above, Hairston's allegations of deliberate indifference to his serious medical needs are sufficient to state a claim against the Defendant Deputies and Sheriff Allen.  Consequently, the court must decide whether the right at issue was clearly established.  In determining whether a right was clearly established, the key inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  In other words, the right's "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Hope v. Peltzer, 536 U.S. 730, 739 (2002) (internal quotation marks and citation omitted).

In the context of a claim related to the denial of medical treatment, the Fourth Circuit previously rejected defendants' "invitations to define the rights at issue in accordance with the 'very action[s] in question.'"  Scinto, 841 F.3d at 236 (alteration in original) (quoting Hope, 536 U.S. at 739).  Instead, the Fourth Circuit "define[d] the right in question as the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their

known medical needs." Id. The Court concluded that "[t]his definition . . . accords with Supreme Court jurisprudence, which has long dictated that the Eighth Amendment confers a duty upon prison officials to ensure that prisoners 'receive adequate . . . medical care.'" Id. (quoting Farmer, 511 U.S. at 832).

An inmate's right to adequate medical care and freedom from deliberate indifference to serious medical needs has been clearly established by the Supreme Court and the Fourth Circuit "since at least 1976." Id. (collecting cases); see also Gordon, 937 F.3d at 356 ("It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.") (quoting Jackson, 775 F.3d at 178). Thus, the right at issue was clearly established at the time of the events giving rise to this action. Because the court concludes that Hairston has adequately alleged that the Sheriff Defendants violated his Eighth Amendment right to be free from deliberate indifference to his serious medical needs and that the right at issue was clearly established, the Sheriff Defendants are not entitled to qualified immunity.

## Conclusion

For the reasons stated, the Sheriff Defendants' motion to dismiss will be granted in part and denied in part. The case against the Sheriff Defendants will proceed on the claims of deliberate indifference in violation of the Eighth Amendment.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 5ᵈ day of March, 2020.

_____
Senior United States District Judge